**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| THE PROTECT DEMOCRACY PROJECT, INC. 2020 Pennsylvania Avenue, NW, #163 Washington, DC 20006 | ) ) ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 17-2225 |
| v. | ) ) | |
| U.S. DEPARTMENT OF JUSTICE, 950 Pennsylvania Avenue, NW Washington, DC 20530, | ) ) ) ) | |
| U.S. DEPARTMENT OF DEFENSE, 1400 Defense Pentagon Washington, DC 20301, and | ) ) | |
| U.S. DEPARTMENT OF STATE, 2201 C St., NW Washington, DC 20520, | | |
| Defendants. | | |

**INTRODUCTION**

1.      The Constitution divides war-making powers between Congress and the President.  It provides Congress with the power to declare and fund wars, and designates the President as the commander-in-chief of the armed forces.  This division of war-making power is intended to avoid a situation in which it is too easy for one person to initiate a war, and to ensure that the United States only goes to war when the people support doing so.

2.      For many months, the Trump Administration has pronounced that a major conflict with North Korea may be coming.  Recent escalations in threats between the

1

Administration and North Korea indicate that a nuclear conflict with North Korea may be imminent, and the Administration has issued several statements suggesting that it is considering launching a preemptive strike against North Korea, which could initiate a nuclear war.  The Administration has neither sought authorization from Congress to commence such a war, nor provided the American public with an explanation of its legal authority to provoke or launch a potentially catastrophic nuclear war with North Korea.

3.     This is not the first time that the Administration has failed to provide a legal rationale for using military force against a foreign sovereign.  On April 6, 2017, the Administration launched military strikes against the Syrian regime.  Since then, it has not provided a detailed legal rationale to justify the Syrian strikes under domestic or international law.

4.     The Administration's failure to disclose its legal justification for using military force prevents Congress from exercising its constitutional responsibilities.  It also deprives the American people of their ability to provide their government with their views about critical national security matters.  Given the magnitude of public and congressional interest in the likelihood that President Trump will initiate a nuclear war with Kim Jong-Un, and given the significant potential loss of life that could result from such a conflict, it is imperative that the public be informed of the Administration's assessments of its authority to initiate a nuclear war with North Korea.

5.     Plaintiff The Protect Democracy Project, Inc. ("Protect Democracy") filed Freedom of Information Act (FOIA) requests with Defendants U.S. Department of Justice ("DOJ"), U.S. Department of Defense ("DOD"), and U.S. Department of State ("State Department") seeking disclosure of the Administration's assessment of its

unilateral authority to take military action against North Korea, without Congressional authorization.  The Defendants have failed to produce the requested FOIA records by the statutorily required deadline. It is time for the public and the Congress to learn just how much power the Trump Administration believes it has to launch a nuclear war.

## COMPLAINT

6.      Plaintiff brings this action against Defendants DOJ, DOD, and State Department to compel compliance with the Freedom of Information Act, 5 U.S.C. § 552. Plaintiff alleges as follows:

## JURISDICTION AND VENUE

7.      The Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

8.      Venue is proper in this district pursuant to 5 U.S.C. § 552(a)(4)(B).

## PARTIES

9.      Plaintiff Protect Democracy is an organization with 501(c)(3) status, incorporated under the laws of the District of Columbia, and headquartered at 2020 Pennsylvania Avenue, NW, #163, Washington, DC 20006.  Plaintiff's mission is to protect our democracy from descending into a more autocratic form of government by preventing those in power from depriving Americans of a free, fair, and fully-informed opportunity to exercise ultimate sovereignty.  As part of this mission, Plaintiff seeks to inform public understanding of operations and activities of the government by gathering and disseminating information that is likely to contribute significantly to the public understanding of executive branch operations and activities.  Plaintiff regularly requests such information pursuant to FOIA.  Plaintiff intends to give the public access to

documents transmitted via FOIA on its website, www.protectdemocracy.org, and to provide information about and analysis of those documents as appropriate.

10. Defendant DOJ is an agency of the executive branch of the federal government of the United States. Defendant DOJ is headquartered at 950 Pennsylvania Avenue, NW, Washington, DC 20530. Defendant has possession, custody, and control of the documents that Plaintiff seeks in response to its FOIA request.

11. Defendant DOD is an agency of the executive branch of the federal government of the United States. Defendant DOD is headquartered at 1400 Defense Pentagon, Washington, DC 20301. Defendant has possession, custody, and control of the documents that Plaintiff seeks in response to its FOIA request.

12. Defendant State Department is an agency of the federal government of the United States headquartered at 2201 C Street NW, Washington DC, 20520. Defendant State Department has possession, custody, and control of the documents that Plaintiff seeks in response to its FOIA request.

## STATEMENT OF FACTS

*President Trump's Statements and Actions Indicate that a U.S. Nuclear Strike Against North Korea May Be Imminent*

13. Over the last several months, President Trump has repeatedly indicated that he is considering ordering imminent military strikes against North Korea.

14. On August 8, 2017, President Trump declared that the U.S. would meet any North Korean "threats" against U.S. territory with "fire, fury, and frankly power the likes of which the world has never seen before." When making this apparent gesture towards nuclear warfare, President Trump did not clarify what kind of North Korean activities would constitute a "threat" worthy of response. He said only that North Korean

4

leader Kim Jong-Un had been "very threatening, beyond a normal state."

15.     In response to the President's statement, North Korea announced that it was exploring plans to strike a U.S. military base in Guam with an "enveloping fire."

16.     This announcement from Pyongyang led to a flurry of statements by President Trump and his top advisors confirming that his "fire and fury" comment did indeed demonstrate a willingness by the Trump Administration to explore military options.  On August 9, 2017, U.S. Defense Secretary James Mattis warned that the U.S. might be forced to take action that would lead to the "end of [the North Korean] regime and the destruction of its people."  President Trump, on August 10, 2017, said that his previous warning to North Korea "maybe wasn't tough enough."

17.     The next day, August 11, 2017, President Trump announced that "military solutions are now fully in place, locked and loaded, should North Korea act unwisely."

18.     On September 3, 2017 — just days after American and South Korean warplanes conducted a bombing drill over the Korean Peninsula — Secretary Mattis made a public statement promising a "massive military response" to any North Korean threat.  He also said that the U.S. has "many options" to "annihilat[e]" North Korea.

19.     When President Trump appeared before the United Nations on September 19, 2017, he again seemed to indicate that a nuclear strike against North Korea was rapidly approaching.  He announced that the U.S. would have "no choice but to totally destroy" North Korea if it threatened U.S. territory or U.S. allies.  In that same speech, the President said that Kim Jong-Un, whom he referred to as "Rocket Man," was on a "suicide mission."

20.     President Trump followed his United Nations' speech with multiple

statements on Twitter that demonstrated his willingness to use massive military force against North Korea.  On September 22, 2017, he called Kim Jong-Un a "madman" who will "be tested like never before!"  On September 23, 2017, he said that North Korea "won't be around much longer" if Kim Jong-Un's aggressive posture continued.

21.     On October 10, 2017, President Trump met with DOD officials to discuss possible military options to deploy against North Korea.  That same evening, the U.S. flew two strategic bombers over the Korean Peninsula.

22.     President Trump's threats and provocations have exacerbated tensions with the North Korean government. Responding to the ongoing military training exercises between American and South Korean forces, on October 13, 2017, the North Korean government renewed its threat to strike Guam, and said that "U.S. military action hardens our determination that the U.S. should be tamed with fire and lets us take our hand closer to the 'trigger' for taking the toughest countermeasure."

*President Trump Has Repeatedly Dismissed Diplomatic Efforts — Even Those Begun by His Own Administration — to Resolve the North Korean Crisis*

23.     Throughout the summer and fall of 2017, President Trump has repeatedly denounced a diplomatic approach to solving the North Korean crisis, often hinting that "only one thing" — presumably, military force — "will work."

24.     On August 15, 2017, South Korean President Moon Jae-in said that a unilateral U.S. strike against North Korea would be intolerable.  Two weeks later, on September 3, 2017, President Trump attacked South Korea's less aggressive stance, saying: "South Korea is finding, as I have told them, that their talk of appeasement with North Korea will not work, they only understand one thing!"

25.     President Trump has also undercut the efforts of U.S. Secretary of State

Rex Tillerson to defuse the crisis through non-military means.  On August 22, 2017,

Secretary Tillerson suggested that the North Korean regime was demonstrating

"restraint," and said that he may have glimpsed a "pathway to . . . having some dialogue."

A week later, on August 30, 2017, the President tweeted that "talking [to North Korea] is

not the answer!"

26.     When Secretary Tillerson, during a trip to Asia, said on September 30,

2017, that diplomatic channels between the U.S. and North Korea were open, President

Trump did not wait even a full day before dismissing the possibility of negotiations.  On

October 1, 2017, he remarked that Secretary Tillerson was "wasting his time" on

diplomacy.  He instead declared that the U.S. would "do what has to be done!"

*The Administration Has Not Provided a Legal Justification under Domestic or*

*International Law to Initiate a Nuclear War with North Korea*

27.     To ensure that the United States does not go to war unless the American

public favors doing so, our Constitution divides war-making powers between Congress

and the President. The Constitution grants Congress the power to declare and fund wars,

and empowers the President to serve as the commander-in-chief of the armed forces.

28.     Congress's role in authorizing and funding wars provides the American

people with the opportunity to express their views to their elected representatives on the

wisdom of engaging in particular military actions.  The ability for Congress and the

public to have a say before the country goes to war is all the more important for a

potential nuclear conflict, which could have horrific consequences.

29.     Congress has not authorized a war with North Korea, and to Plaintiff's

knowledge the Administration has not sought Congressional authorization to initiate a

war with North Korea. While the Administration has threatened initiating use of force against North Korea, it has not provided Congress or the American people with an explanation of its purported legal rationale that would permit it to commence such a war under U.S. law.

30.     Similarly, the Administration has not explained the legal rationale that would permit it to conduct a preemptive nuclear strike against North Korea under international law.

31.     The United Nations Charter, as ratified by the U.S., permits the use of force against another country only with permission of the United Nations Security Council or as a matter of self-defense.  Although the Administration has asserted at a United Nations meeting that a U.S. nuclear strike against North Korea may be imminent, there is no Security Council resolution providing legal authority for U.S. military action against North Korea.

32.     The Security Council has already taken a different course of action to oppose North Korean provocation.  On September 11, 2017, it adopted another round of sanctions against the Kim regime.  The resolution indicates the seriousness with which the Security Council regards the North Korean crisis, and also indicates that the Security Council has consciously avoided a military approach at this time.

33.     Congressional leaders have expressed concern that Trump's statements at home and abroad may provoke a nuclear conflict with North Korea.  In an October 8, 2017, interview, Senator Bob Corker (R-TN) said that the President's actions might lead the U.S. down a "path to World War III."  He said that many members of his caucus agree with him.

34.     Legislators from both parties have said on the record that the Administration would need to seek authorization before launching a preemptive nuclear strike against North Korea.  For example, Senator Christopher Murphy (D-CT) has said that Congress should authorize military force in other military theaters "as a way of making the President see clearly that action against North Korea shouldn't be taken without authorization."  Senator Dan Sullivan (R-AK) has also said that a preemptive war with North Korea would "require the authorization of Congress."

35.     House Minority Leader Nancy Pelosi has urged Congress to pass restrictions on preemptive nuclear strikes, and two other Democratic representatives — Senator Ed Markey (D-MA) and Representative Ted Lieu (D-CA) — have introduced legislation to prevent the President from launching a nuclear first strike without a Congressional declaration of war.

36.     The American public will be precluded from fully engaging in the debate about initiating a war with North Korea and be hindered from expressing well-informed opinions to Congress on this matter without information from Defendant agencies about the Administration's view of its domestic and international legal authority to undertake military action in North Korea.

*The Administration Has Already Taken Military Action Against Other Foreign Sovereigns Without Providing Congress or the American People with its Legal Justification for the Military Action*

37.     Plaintiff is particularly concerned that the Administration will launch military strikes against North Korea without obtaining congressional authorization or explaining its legal authority because it has already done this against another foreign

sovereign.

38.     On April 6, 2017, President Trump ordered U.S. warships to launch 59 Tomahawk cruise missiles at a Syrian government airbase.

39.     On April 8, 2017, the President provided notification to Congress of the Syria strikes, in a document slightly longer than one page, stating that he "acted in the vital national security and foreign policy interests of the United States, pursuant to [his] constitutional authority to conduct foreign relations and as Commander in Chief and Chief Executive." The President's letter further stated that "[t]he United States will take additional action, as necessary and appropriate, to further its important national interests."

40.     The April 8, 2017 letter does not articulate the domestic or international legal justification for the Syria strikes.  The letter also does not identify any legal limits to the President's war-making powers, suggesting that a preemptive strike against North Korea is not out of the question.

*The Vast Majority of Americans are Rightly Concerned About the Potential for a Nuclear War with North Korea*

41.     The American public has substantial interest and concern in the possibility that the Administration will start a nuclear war.

42.     An August 11, 2017 survey by Public Policy Polling found that 82% of Americans fear war with North Korea, while an August 8, 2017 poll by CBS News found that 72% of Americans were uneasy about a potential conflict.

43.     President Trump has admitted that the impact of a nuclear strike would be "catastrophic," saying in an August 16, 2017 tweet that the alternative to a retraction of North Korean threats "would have been both catastrophic and unacceptable!"  On

September 26, 2017, the President said that the U.S. was prepared for a military operation against North Korea, which he called "devastating."

44.     The Pentagon has estimated that approximately 20,000 South Koreans would die each day in the event of a conflict between North Korea and the U.S., *excluding* any casualties that result from the use of nuclear weapons.

45.     Over 24,000 U.S. troops are stationed in South Korea, and they would be likely targets of a North Korean response to a U.S. attack.

46.     In order for Congress to exercise its role as a representative of the people, the American people must be able to provide their representatives with their views. The public cannot do this in an informed way regarding the North Korea crisis in the absence of information from Defendant agencies about the legal authority that is being asserted to justify the potential military action.

47.     In a separate Protect Democracy FOIA lawsuit to disclose the Trump Administration's rationale for its use of force against the Syrian government, the District Court for the District of Columbia said that the requested information was central to "ongoing public and congressional debates about issues of vital national importance."

48.     The court's memorandum opinion also stated that "if production is unduly delayed, both [Plaintiff] and the public at large will be 'precluded ... from obtaining in a timely fashion information vital to the current and ongoing debate surrounding the legality of' a high-profile government action—namely, military strikes . . ..  Being closed off from such a debate is itself a harm in an open democracy."

49.     There is an urgent need for the requested FOIA documents to enable the American people and their elected representatives in Congress to have a say in the

looming decision about whether the U.S. military should initiate a preemptive nuclear

action against North Korea.

*FOIA to DOJ's Office of Information Policy (OIP)*

50. On September 1, 2017, Plaintiff sent a FOIA request to Defendant DOJ's

OIP seeking the following records:

1. Any and all records that reflect, discuss, or otherwise refer to advice provided to the White House concerning the President's legal authority to launch military strikes or conduct armed conflict against North Korea. This request includes, but is not limited to, internal Department of Justice communications, communications between Department of Justice employees and the Executive Office of the President, and communications between Department of Justice employees and other agencies. The timeframe for the records sought in this paragraph is January 20, 2017 through the date that searches are conducted for records responsive to this FOIA request.

2. Any and all records that reflect, discuss, or otherwise refer to consulting with Congress or obtaining Congressional authorization with respect to launching military strikes or initiating armed conflict against North Korea. This request includes, but is not limited to, internal Department of Justice communications, communications between Department of Justice employees and the Executive Office of the President, communications between Department of Justice employees and other agencies, and communications between Department of Justice employees and Members of Congress, Congressional Committees, or their staffs. The timeframe for the records sought in this paragraph is January 20, 2017 through the date that searches are conducted for records responsive to this FOIA request.

3. Any and all records that reflect, discuss, or otherwise refer to President Trump's statement or tweet of August 8, 2017 threatening that North Korea will be "met with fire and fury." This includes any records reacting or responding to the President's tweet. The timeframe for the records sought in this paragraph is August 1, 2017 through the date that searches are conducted for records responsive to this FOIA request.

4. Any and all records that reflect, discuss, or otherwise refer to President Trump's statement or tweet of August 30, 2017 stating: "the U.S. has been talking to North Korea, and paying them extortion money, for 25 years. Talking is not the answer!" The timeframe for the records sought in this paragraph is August 1, 2017 through the date that searches are conducted for records responsive to this FOIA request.

5.  In addition to the records requested above, we also request records describing the processing of this request, including records sufficient to identify search terms used and locations and custodians searched, and any tracking sheets used to track the processing of this request. If your agency uses FOIA questionnaires or certifications completed by individual custodians or components to determine whether they possess responsive materials or to describe how they conducted searches, we also request any such records prepared in connection with the processing of this request.

*See* Exhibit A.

51.     Plaintiff requested expedited processing of the request pursuant to 5 U.S.C. § 552(a)(6)(E) and 22 C. F. R. § 16.5(e).  *See id.*

52.     Plaintiff also requested a fee waiver pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) or 5 U.S.C. § 552(a)(4)(A)(ii)(II).  *See id.*

53.     Plaintiff's request was submitted by fax on September 1, 2017. On September 6, 2017, Defendant DOJ's OIP sent an email to Plaintiff confirming that Plaintiff's request had been submitted to the FOIA online application on September 1, 2017, and assigning it a tracking number. *See* Exhibit B.

54.     On October 10, 2017, Defendant DOJ's OIP wrote to Plaintiff that it denied Plaintiff's request for expedited processing. Defendant did not respond to Plaintiff's request for a fee waiver. *See* Exhibit C.

55.     Pursuant to FOIA, within 20 business days of receipt of Plaintiff's request – that is, by September 29, 2017 – Defendant was required to "determine . . . whether to comply with such request" and to "immediately notify" Plaintiff of "such determination and the reasons therefor," Plaintiff's right "to seek assistance from the FOIA Public Liaison of the agency," and, in the case of an adverse determination, Plaintiff's appeal rights.  5 U.S.C. § 552(a)(6)(A)(i).

56.     To date, Defendant has failed to make the required determination and

notifications.  Nor has Defendant made a determination regarding Plaintiff's request for a

fee waiver.

*FOIA to DOJ's Office of Legal Counsel (OLC)*

57.     On September 1, 2017, Plaintiff sent a FOIA request to Defendant DOJ's

OLC seeking the following records:

1. Any and all records that reflect, discuss, or otherwise refer to advice provided
   to the White House concerning the President's legal authority to launch
   military strikes or conduct armed conflict against North Korea. This request
   includes, but is not limited to, internal Department of Justice communications,
   communications between Department of Justice employees and the Executive
   Office of the President, and communications between Department of Justice
   employees and other agencies. The timeframe for the records sought in this
   paragraph is January 20, 2017 through the date that searches are conducted for
   records responsive to this FOIA request.

2. Any and all records that reflect, discuss, or otherwise refer to consulting with
   Congress or obtaining Congressional authorization with respect to launching
   military strikes or initiating armed conflict against North Korea. This request
   includes, but is not limited to, internal Department of Justice communications,
   communications between Department of Justice employees and the Executive
   Office of the President, communications between Department of Justice
   employees and other agencies, and communications between Department of
   Justice employees and Members of Congress, Congressional Committees, or
   their staffs. The timeframe for the records sought in this paragraph is January
   20, 2017 through the date that searches are conducted for records responsive
   to this FOIA request.

3. Any and all records that reflect, discuss, or otherwise refer to President
   Trump's statement or tweet of August 8, 2017 threatening that North Korea
   will be "met with fire and fury." This includes any records reacting or
   responding to the President's tweet. The timeframe for the records sought in
   this paragraph is August 1, 2017 through the date that searches are conducted
   for records responsive to this FOIA request.

4. Any and all records that reflect, discuss, or otherwise refer to President
   Trump's statement or tweet of August 30, 2017 stating: "the U.S. has been
   talking to North Korea, and paying them extortion money, for 25 years.
   Talking is not the answer!" The timeframe for the records sought in this
   paragraph is August 1, 2017 through the date that searches are conducted for
   records responsive to this FOIA request.

5.  In addition to the records requested above, we also request records describing the processing of this request, including records sufficient to identify search terms used and locations and custodians searched, and any tracking sheets used to track the processing of this request. If your agency uses FOIA questionnaires or certifications completed by individual custodians or components to determine whether they possess responsive materials or to describe how they conducted searches, we also request any such records prepared in connection with the processing of this request.

*See* Exhibit D.

58.  Plaintiff requested expedited processing of the request pursuant to 5 U.S.C. § 552(a)(6)(E) and 22 C. F. R. § 16.5(e).  *See id.*

59.  Plaintiff also requested a fee waiver pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) or 5 U.S.C. § 552(a)(4)(A)(ii)(II).  *See id.*

60.  Plaintiff's request was submitted by email on September 1, 2017. On September 5, 2017, Defendant DOJ's OLC wrote a letter to Plaintiff acknowledging receipt of Plaintiff's request on September 1, 2017, and assigning it a tracking number. At this time, Defendant OLC granted the request for expedited processing. Defendant also stated it had not made a decision on the fee waiver. *See* Exhibit E.

61.  Pursuant to FOIA, within 20 business days of receipt of Plaintiff's request – that is, by September 29, 2017 – Defendant was required to "determine . . . whether to comply with such request" and to "immediately notify" Plaintiff of "such determination and the reasons therefor," Plaintiff's right "to seek assistance from the FOIA Public Liaison of the agency," and, in the case of an adverse determination, Plaintiff's appeal rights.  5 U.S.C. § 552(a)(6)(A)(i).

62.  To date, Defendant has failed to make the required determination and notifications.  Nor has Defendant made a determination regarding Plaintiff's request for a

fee waiver.

*FOIA to DOJ's National Security Division (NSD)*

63.     On September 1, 2017, Plaintiff sent a FOIA request to Defendant DOJ's

NSD seeking the following records:

1.  Any and all records that reflect, discuss, or otherwise refer to advice provided to the White House concerning the President's legal authority to launch military strikes or conduct armed conflict against North Korea. This request includes, but is not limited to, internal Department of Justice communications, communications between Department of Justice employees and the Executive Office of the President, and communications between Department of Justice employees and other agencies. The timeframe for the records sought in this paragraph is January 20, 2017 through the date that searches are conducted for records responsive to this FOIA request.

2.  Any and all records that reflect, discuss, or otherwise refer to consulting with Congress or obtaining Congressional authorization with respect to launching military strikes or initiating armed conflict against North Korea. This request includes, but is not limited to, internal Department of Justice communications, communications between Department of Justice employees and the Executive Office of the President, communications between Department of Justice employees and other agencies, and communications between Department of Justice employees and Members of Congress, Congressional Committees, or their staffs. The timeframe for the records sought in this paragraph is January 20, 2017 through the date that searches are conducted for records responsive to this FOIA request.

3.  Any and all records that reflect, discuss, or otherwise refer to President Trump's statement or tweet of August 8, 2017 threatening that North Korea will be "met with fire and fury." This includes any records reacting or responding to the President's tweet. The timeframe for the records sought in this paragraph is August 1, 2017 through the date that searches are conducted for records responsive to this FOIA request.

4.   Any and all records that reflect, discuss, or otherwise refer to President Trump's statement or tweet of August 30, 2017 stating: "the U.S. has been talking to North Korea, and paying them extortion money, for 25 years. Talking is not the answer!" The timeframe for the records sought in this paragraph is August 1, 2017 through the date that searches are conducted for records responsive to this FOIA request.

5.  In addition to the records requested above, we also request records describing the processing of this request, including records sufficient to identify search

terms used and locations and custodians searched, and any tracking sheets used to track the processing of this request. If your agency uses FOIA questionnaires or certifications completed by individual custodians or components to determine whether they possess responsive materials or to describe how they conducted searches, we also request any such records prepared in connection with the processing of this request.

*See* Exhibit F.

64.     Plaintiff requested expedited processing of the request pursuant to 5 U.S.C. § 552(a)(6)(E) and 22 C. F. R. § 16.5(e).  *See id.*

65.     Plaintiff also requested a fee waiver pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) or 5 U.S.C. § 552(a)(4)(A)(ii)(II).  *See id.*

66.     Plaintiff's request was submitted by email on September 1, 2017.  On September 12, 2017, Defendant DOJ's NSD sent an email to Plaintiff acknowledging receipt of Plaintiff's request on September 1, 2017, and assigning it a tracking number. At this time, Defendant stated that the requests for expedited processing and a fee waiver were both under consideration. *See* Exhibit G.

67.     On September 12, 2017, Plaintiff's attorney Allison Murphy sent an email to Defendant DOJ's NSD urging them to grant the expedition request, as Defendant DOJ's OLC had already granted it and both OLC and NSD are within the Department of Justice. *See id*.

68.     On October 5, 2017, Defendant DOJ's NSD wrote back via email denying both the request for expedited processing and the request for a fee waiver. Defendant also stated that the reason for denying a fee waiver is that Plaintiff Protect Democracy is "a representative of the news media," which it is not. *See id*.

69.      Though Plaintiff disagrees with the Defendant NSD's determination that a fee waiver is not warranted here, Plaintiff will forgo its appeal rights because of the

urgency and importance of the records requested.

70.     Separate and apart from the fee waiver issue, pursuant to 5 U.S.C. §552(a)(4)(A)(viii), Defendant DOJ's NSD is prohibited from assessing search fees for this request because it has failed to comply with relevant statutory time limits.

71.     Pursuant to FOIA, within 20 business days of receipt of Plaintiff's request – that is, by September 29, 2017 – Defendant was required to "determine . . . whether to comply with such request" and to "immediately notify" Plaintiff of "such determination and the reasons therefor," Plaintiff's right "to seek assistance from the FOIA Public Liaison of the agency," and, in the case of an adverse determination, Plaintiff's appeal rights.  5 U.S.C. § 552(a)(6)(A)(i).

72.     To date, Defendant has failed to make the required determination and notifications.

*FOIA to Department of Defense (DOD)*

73.     On September 1, 2017, Plaintiff sent a FOIA request to Defendant DOD seeking the following records:

1.  Any and all records that reflect, discuss, or otherwise refer to advice provided to the White House concerning the President's legal authority to launch military strikes or conduct armed conflict against North Korea. This request includes, but is not limited to, internal Department of Defense communications, communications between Department of Defense employees and the Executive Office of the President, and communications between Department of Defense employees and other agencies. The timeframe for the records sought in this paragraph is January 20, 2017 through the date that searches are conducted for records responsive to this FOIA request.

2.  Any and all records that reflect, discuss, or otherwise refer to consulting with Congress or obtaining Congressional authorization with respect to launching military strikes or initiating armed conflict against North Korea. This request includes, but is not limited to, internal Department of Defense communications, communications between Department of Defense employees and the Executive Office of the President, communications between

Department of Defense employees and other agencies, and communications between Department of Defense employees and Members of Congress, Congressional Committees, or their staffs. The timeframe for the records sought in this paragraph is January 20, 2017 through the date that searches are conducted for records responsive to this FOIA request.

3.   Any and all records that reflect, discuss, or otherwise refer to President Trump's statement or tweet of August 8, 2017 threatening that North Korea will be "met with fire and fury." This includes any records reacting or responding to the President's tweet. The timeframe for the records sought in this paragraph is August 1, 2017 through the date that searches are conducted for records responsive to this FOIA request.

4.   Any and all records that reflect, discuss, or otherwise refer to President Trump's statement or tweet of August 30, 2017 stating: "the U.S. has been talking to North Korea, and paying them extortion money, for 25 years. Talking is not the answer!" The timeframe for the records sought in this paragraph is August 1, 2017 through the date that searches are conducted for records responsive to this FOIA request.

5.   In addition to the records requested above, we also request records describing the processing of this request, including records sufficient to identify search terms used and locations and custodians searched, and any tracking sheets used to track the processing of this request. If your agency uses FOIA questionnaires or certifications completed by individual custodians or components to determine whether they possess responsive materials or to describe how they conducted searches, we also request any such records prepared in connection with the processing of this request.

*See* Exhibit H.

74.   Plaintiff requested expedited processing of the request pursuant to 5

U.S.C. § 552(a)(6)(E) and 32 C. F. R. § 286(e).  *See id.*

75.   Plaintiff also requested a fee waiver pursuant to 5 U.S.C. §

552(a)(4)(A)(iii) or 5 U.S.C. § 552(a)(4)(A)(ii)(II).  *See id.*

76.   Plaintiff's request was submitted by fax on September 1, 2017.  On

September 7, 2017, Defendant DOD wrote to Plaintiff, acknowledging that the request

had been received on September 5, 2017, and assigning it a tracking number. *See* Exhibit

I.

77.     Defendant rejected Plaintiff's fifth item of the request for records on the basis that such records had not yet been created, and invited Plaintiff to submit that request after the initial request had been fulfilled. *See id.*

78.     Defendant also stated that it would "not be able to respond within the FOIA's 20-day statutory time period as there are unusual circumstances that impact [its] ability to quickly process [Plaintiff's] request." *See id.*

79.     In unusual circumstances, the 20-day statutory time limit "may be extended by written notice to the person making such request setting forth the reasons for such extension and the date on which a determination is expected to be dispatched." 5 U.S.C. § 552(a)(6)(B).

80.     Defendant DOD did not specify the date its determination is expected to be dispatched.

81.     Additionally, even if DOD had provided the requisite determination date, the extension could not exceed 10 working days. *See* 5 U.S.C. § 552(a)(6)(B).

82.     Defendant rejected Plaintiff's request for expedited processing and postponed the determination of a fee waiver. *See* Exhibit I.

83.     Pursuant to FOIA, within 20 business days of receipt of Plaintiff's request – that is, by October 2, 2017 – Defendant was required to "determine . . . whether to comply with such request" and to "immediately notify" Plaintiff of "such determination and the reasons therefor," Plaintiff's right "to seek assistance from the FOIA Public Liaison of the agency," and, in the case of an adverse determination, Plaintiff's appeal rights.  5 U.S.C. § 552(a)(6)(A)(i).

84.     To date, Defendant has failed to make the required determination and

notifications. Nor has Defendant made a determination regarding Plaintiff's request for a

fee waiver.

*FOIA to State Department*

85.     On September 1, 2017, Plaintiff sent a FOIA request to Defendant State

Department seeking the following records:

1.  Any and all records that reflect, discuss, or otherwise refer to advice provided
    to the White House concerning the President's legal authority to launch
    military strikes or conduct armed conflict against North Korea. This request
    includes, but is not limited to, internal Department of Defense
    communications, communications between Department of Defense employees
    and the Executive Office of the President, and communications between
    Department of Defense employees and other agencies. The timeframe for the
    records sought in this paragraph is January 20, 2017 through the date that
    searches are conducted for records responsive to this FOIA request.

2.  Any and all records that reflect, discuss, or otherwise refer to consulting with
    Congress or obtaining Congressional authorization with respect to launching
    military strikes or initiating armed conflict against North Korea. This request
    includes, but is not limited to, internal Department of Defense
    communications, communications between Department of Defense employees
    and the Executive Office of the President, communications between
    Department of Defense employees and other agencies, and communications
    between Department of Defense employees and Members of Congress,
    Congressional Committees, or their staffs. The timeframe for the records
    sought in this paragraph is January 20, 2017 through the date that searches are
    conducted for records responsive to this FOIA request.

3.  Any and all records that reflect, discuss, or otherwise refer to President
    Trump's statement or tweet of August 8, 2017 threatening that North Korea
    will be "met with fire and fury." This includes any records reacting or
    responding to the President's tweet. The timeframe for the records sought in
    this paragraph is August 1, 2017 through the date that searches are conducted
    for records responsive to this FOIA request.

4.  Any and all records that reflect, discuss, or otherwise refer to President
    Trump's statement or tweet of August 30, 2017 stating: "the U.S. has been
    talking to North Korea, and paying them extortion money, for 25 years.
    Talking is not the answer!" The timeframe for the records sought in this
    paragraph is August 1, 2017 through the date that searches are conducted for
    records responsive to this FOIA request.

5.  In addition to the records requested above, we also request records describing the processing of this request, including records sufficient to identify search terms used and locations and custodians searched, and any tracking sheets used to track the processing of this request. If your agency uses FOIA questionnaires or certifications completed by individual custodians or components to determine whether they possess responsive materials or to describe how they conducted searches, we also request any such records prepared in connection with the processing of this request.

*See* Exhibit J.

86.  Plaintiff requested expedited processing of the request pursuant to 5 U.S.C. § 552(a)(6)(E) and 22 C. F. R. § 171.11(f).  *See id.*

87.  Plaintiff also requested a fee waiver pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) or 5 U.S.C. § 552(a)(4)(A)(ii)(II).  *See id.*

88.  Plaintiff's request was submitted by fax on September 1, 2017.  On September 13, 2017, Defendant wrote to Plaintiff acknowledging that the request had been received on September 1, 2017, and assigning it a tracking number. *See* Exhibit K.

89.  Defendant also granted Plaintiff's request for expedited processing and request for a fee waiver. *See id.*

90.  Pursuant to FOIA, within 20 business days of receipt of Plaintiff's request – that is, by September 29, 2017 – Defendant was required to "determine . . . whether to comply with such request" and to "immediately notify" Plaintiff of "such determination and the reasons therefor," Plaintiff's right "to seek assistance from the FOIA Public Liaison of the agency," and, in the case of an adverse determination, Plaintiff's appeal rights.  5 U.S.C. § 552(a)(6)(A)(i).

91.  To date, Defendant has failed to make the required determination and notifications.

**COUNT I**
**(Violation of FOIA, 5 U.S.C. § 552)**

92.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

93.     Defendants DOJ, DOD, and State Department are in violation of FOIA by failing to respond to Plaintiff's request within the statutorily prescribed time limit and by unlawfully withholding records responsive to Plaintiff's request.

**COUNT II**
**(Violation of FOIA, 5 U.S.C. § 552(a)(6)(E))**

94.     Defendants DOJ (OIP and NSD) and DOD are in violation of FOIA by failing to grant expedited processing to Plaintiff under 5 U.S.C. §552(a)(6)(E) and Defendants' corresponding regulations.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court:

(1) Order Defendants, by a date certain, to conduct a search that is reasonably likely to lead to the discovery of any and all records responsive to Plaintiff's request;

(2) Order Defendants, by a date certain, to demonstrate that it has conducted an adequate search;

(3) Order Defendants, by a date certain, to produce to Plaintiff any and all non-exempt records or portions of records responsive to Plaintiff's request, as well as a *Vaughn* index of any records or portions of records withheld due to a claim of exemption;

(4) Enjoin Defendants from improperly withholding records responsive to Plaintiff's request;

(5) Order Defendants to grant Plaintiff's request for a fee waiver;

(6) Grant Plaintiff an award of attorney fees and other reasonable litigation costs

pursuant to 5 U.S.C. § 552(a)(4)(E);

(7) Grant Plaintiff such other relief as the Court deems appropriate.


Date: October 26, 2017              /s/ Justin Florence

                                    JUSTIN FLORENCE (DC Bar No. 988953)
                                        Justin.Florence@protectdemocracy.org
                                    NICOLE NDUMELE (DC Bar No. 975188)
                                        (pro hac vice to be filed)
                                        Nicole.Ndumele@protectdemocracy.org
                                    Counsel, The Protect Democracy Project, Inc.
                                    2020 Pennsylvania Ave., NW #163
                                    Washington, DC 20006
                                    Phone: 202-599- 0466
                                    Fax: 929-777- 8428

                                    *Counsel for Plaintiff*